Case No. 317-0013, Equal of the State of Illinois, AFL-E by Nicholas Atwood v. Patrick Roche, Appellant by Anna M. Sarenheim Ms. Sarenheim, good afternoon. Good afternoon, Roger. Thank you. My name is Anna Sarenheim and I represent Patrick Roche in this appeal. In this challenging and special system term for aggravated DUI. Time permitting, I would like to address both of the issues raised. There are two issues raised, but I would like to touch on both at the same time. Just quickly, the undisputed facts. My client just ran out of iron in the lane when he was under the influence of alcohol. He was cooperative with the scene, but he admitted drinking, he struck a car in the intersection, and the other driver was seriously injured. Because of which, it's aggravated DUI, based on a great bodily harm, which expanded the case from an ordinary class 4 felony of up to 3 years in prison to the extended DUI extension of up to 12 years. So because of that, our first argument is the reliance on great bodily harm. Again, this aggravation was an improper health enhancement. I think it's a pretty straightforward argument, but I do want to mention that I believe it's significant that the state really took a different position at trial than they are here. At least the way I read the record. I mean, the argument is the one that you would expect that the state was arguing, that the bodily harm in this case was so much greater than what was incurred in offense, it could be considered a gun inaggravation. But I would like to refer the Court to their argument at sentencing where, in aggravation, the prosecutor specifically argued that the defendant's conduct caused for some serious harm, and then he said explicitly, that was the basis for the upgrade of aggravated DUI charge. So I think that's really a very straightforward reliance on a factor inherent in the offense. And then the trial judge essentially echoed those very words and said, we agree with the prosecution. We will impose the five-year term of service precedent. So I think that the record really makes a very straightforward case for improper health enhancement reliance twice on the same aggravated factor. Now, there's no question there are cases that go beyond what is inherent in the offense in which great bodily harm can be considered a second time. But I think, and the state relies on a case, but I think it's a good illustration of when that is appropriate. In People v. Rennie, the case that they cite in their brief, it was an aggravated DUI resulting in the death of a woman and great bodily injury to her husband, to the decedent's husband. But he not only lost his wife, he lost a leg and he lost the use of an arm. I mean, that's an obvious case where there's great bodily harm that well exceeds what is inherent in the offense. And I believe that the reliance on that case I think is in some ways can be seen as a concession that there really was nothing anywhere near approaching that that would justify reliance twice on great bodily harm in this case. The second improper factor that we argue is a little bit more unusual. Our position is that deterrence is not appropriately relied on in an aggravated DUI case. And we have the case law that we rely on is marked within the Illinois Supreme Court, which says that basically it says that the deterrence as an aggravating factor is proper to the extent that the offense includes a menstrual element that is capable of being deterred. An aggravated DUI is a strict liability offense. The state of mind, therefore, cannot be deterred because there is no state of mind. But that doesn't mean that deterrence is not considered in this case. It is embedded within the statute. It is for the express purpose of deterring DUI that the legislature created all of these enhancements to the DUI statute, including the one that my client was convicted of aggravated DUI with a maximum term of 12 years. So it's really structural to the statute itself. So the argument is that it can't be considered again as aggravation. And that's, again, like great bodily harm, there are cases in which you might be able to say the importance of deterrence so far exceeds what the statute contemplates that you can consider it again. And again, one of the state's cases, I think, is a good illustration of that. They cite People v. Trost, a second district case in which the defendant had driven with a much higher blood alcohol content than my client. He killed someone. After the crime, he continued to commit crimes using alcohol, including another DUI. So obviously the deterrent effect following killing someone after extremely heavy drinking did not provide sufficient deterrence. And by the time he got to sentencing, that was properly considered. Interestingly, he got the same sentence as my client, five years, for a reckless homicide. That's not an issue in the case. But I think the case of Trost illustrates well that our case is not one where there is some kind of deterrent effect that needs to be underscored. In fact, our case is exactly the opposite. The judge, after the conviction and after she imposed a five-year term, which was in early November, my client's attorney asked if it would be okay if her client could stay out with his family until after Thanksgiving. And the judge said, no problem. You can stay out until after the first of the year. Spend the holidays at home. The judge trusted my client to go home, did not feel there was some kind of concern that he was going to reoffend. So that, I think, really underscores the difference between this case and any of the cases that the state relies on. It also brings me to the second issue in the case, which is our excessive sentence claim. Before you leave the first one, excuse me, I'd like to go back to the first part about the great bodily harm. The Supreme Court decided a case called Saldivar. And in it, they said that the nature of the offense determines the range, and the degree of injury determines the sentence within the range. Why is that not what the trial court did here? Well, I think that Your Honor has to look, first of all, at the cases where Saldivar has been applied, and facts inherently offensive are not to be considered twice. There cannot be double enhancement. And I think in our case, the only factors that the judge relied on were the bodily harm and the deterrence. There was nothing else to explain why he would have a five-year sentence when the minimum was one and he was eligible for probation. But the maximum was 12, which he was also eligible for. That's correct. That's correct. And I think, though, that there are many, many aggravating factors that can take place in a DUI that are not present here. And there can be much more severe injury. The cases, I think, that where it's appropriately considered a second time are cases such as when there's a – one of the cases I talked about, there's a second person who's severely injured or, you know, injured at least demonstrably. There was a second person in this case. Wasn't there another person in the vehicle? Excuse me. There was another person in the vehicle. And the state does argue that she was injured. They present an argument that I believe was not presented below. There was no argument made that – I think they talk in the brief about her having had a head injury based on some testimony that she had – she wasn't sure what happened, but there was no reliance on that. There was no medical evidence. She did remember – she testified to some of the events that occurred. She was not hospitalized. I think she was taken and released. So I don't think that there's evidence to support that there was a medical injury, that there was any kind of serious injury to the passenger, thankfully. I still have some follow-up. Just by virtue of the fact that there was great bodily harm of any kind, the defendant was subject to a 12-year term. So there has to be some mechanism by which the trial court decides where, between one year and 12 years, this case falls on the continuum. And apparently, according to the Supreme Court, the degree of injury is a proper consideration in determining that. And as I read what the trial court was saying, he was talking about degree of injury. He wasn't just saying great bodily harm. But the problem with that is that there isn't evidence to support that there was a degree of injury that was hugely severe. And I think that the cases involving factors inherent in offense double enhancement and great bodily harm are looking for something that is great, great bodily harm. I think that would be the kind of layperson's way of describing it. And so I was trying to describe some examples of where that might occur, permanent injuries. There's no permanent injuries that were demonstrated in this case. What about five surgeries? Well, there were five surgeries. I believe that's what was said. I think that that's correct. I'm not going to dispute that he had very serious injuries that were treated in the hospital, and he was hospitalized for a few weeks. And as a practical matter, it was less than half of the range. Well, but he was also eligible for probation. And it was also two years above the maximum for the class four felony. So he was already given – he was eligible for down to one year. And our position is – He was eligible up to 12. It could go up to 12. Right. He was eligible for probation or one to 12 years. And we are also arguing excessive sentence. But I think that – I believe that the case law would require bodily injuries that are demonstrably more severe than what this record shows. Didn't the victim's parents submit a letter saying that it was over a million dollars in medical charges? There was – there were medical bills that were – there's some mention in the record of medical bills exceeding a million dollars. If there's – you know, I don't know that we want to get into what actionaries would find is appropriate here. I mean, I can say as a lay person, I know that going to the hospital costs a lot of money, and there's no doubt about it. I mean, I think that's consistent with him being hospitalized and having a lot of treatment. But I don't believe that that – we know enough about the cost of medicine to say that one million dollars somehow means that this is great, great bodily harm. I think it's really just corroboration that he had serious injuries. And that he had – and there's no dispute about the amount of time that he was in the hospital. I hope that answers the question. It does. Thank you. The only thing that I want to point out with regard to the special sentence that I think we haven't covered here, the main point is that I do not believe that the record reflects an appropriate consideration of probation. It is a presumption, and it is supposed to be imposed unless the judge finds that a prison term is necessary to protect the public or to deprecate – probation would deprecate the seriousness of the defense. And I just want to reiterate what the judge said when she entrusted him to stay out for basically as long as he chose. I mean, that's really what the judge had said. She said – she said that when asked whether he could stay home for the holidays, I'll give him until after the first of the year. He's always appeared, so I don't care. He needs to pick a date and time. The judge trusted him, but I don't think that she felt that either of the two criteria – I think the record shows that she did not think that those applied. In the little bit of time I have left, I just want to make sure I point out that the probation presumption does apply here. The state industry cites the statute that says that the defendant has to show exceptional circumstances for probation. That statute only governs to DUIs whether there's a death involved. So that statute does not apply. The usual presumption of probation applies here, and our position is that the judge did not give sufficient consideration to that. I guess I have a few seconds left to just point the court to the strong litigation in the case, very strong family support, community volunteerism. The judge expressly found no aggravated criminal history to consider, and that accepted the mitigation as compelling. I believe that the sentence is based more on the consideration of improper factors than an appropriate weighing of aggravation and mitigation. So we're asking that the court remand her re-sentencing or for the judge to fairly consider a term of probation. Any other questions? Thank you. Thank you very much. Mr. Atwood, good afternoon. May it please the Court, good afternoon, Your Honor. Counsel. My name is Nicholas Atwood. I represent the people of the state of Illinois in this matter. There are two issues before the court, as counsel had stated. First is whether the defendant was subjected to an improper double enhancement based on the great bodily harm consideration as well as the deterrence factor, and also whether his five-year sentence was excessive. First, I'd briefly like to touch on the plein air aspect of this case. The facts show the defendant did not object to the court's comments. He also did not include the double enhancement claim in the post-trial motion. Therefore, that issue would be forfeited. The defendant advocates for plein air, both that the evidence was closely balanced as well as his fundamental right to liberty is implicated in this case. I'd like to briefly mention a couple of cases. He will be McGath out of the 4th District, and he will be Gutierrez out of the 2nd District. These cases, I think, are relevant here because in McGath, we had a plein air analysis of a double enhancement claim that was done in the 4th District under a situation where the defendant failed to consider that issue. And the McGath court noted that in a case where the defendant simply alleges that a fundamental right has been violated, that is insufficient to trigger an automatic review under plein air. And that court also found it wasn't a closely balanced case, which I think the facts have shown that this case also wasn't closely balanced. With regard to the Teterra case, there was no plein air analysis in that case. It was a forfeiture analysis based on the fact that the defendant had been admonished under Rule 605 and was required to include any sentencing issues in a post-sentencing motion and did not do so. And I think if we read these cases together, what they basically stand for is that double enhancement claims are not automatically reviewable as under forfeiture principles, and also that under the facts of this case, the defendant was admonished of the requirement that he include any sentencing errors in a post-sentencing motion, and then he did not do so. And Justice McVeigh, recently in a case, he will be Mitoch, which is also a case that I have handled, distinguished these cases. I think that Mitoch is a different situation because in Mitoch, they used predicate felonies prior DUI to enhance the charge to aggravated DUI, and then they used those same predicate felonies to enhance to apply that sentencing error. That's a classic double enhancement, which we conceded in that plea. But what I think is different from that case to this case is that the Mitoch case, he clearly had an unfair sentencing hearing as a matter of law. There's no question about that. It was completely wrong from the get-go that he was subjected to that sentence, whereas here, we did not have that same factual pattern. So I think there is a slight distinguishing factor. However, it's ultimately this Court's discretion whether or not they're going to find this is a matter of forfeiture from there. And so to the extent that this Court does review these issues, I think under the first issue, the defendant's claim that the great bodily harm was a double enhancement because that was also the predicate to the aggravated felony. And as Justice McDade pointed out, the defendant relied on Conover, which was walked back, in a sense, in the Saldivar case in the Illinois Supreme Court. Saldivar said, we didn't intend for a rigid application of this rule precisely for the reason Justice McDade stated. We've got a range, but then the trial court needs to have some sort of a discretion to determine how severe was this when they sentenced the defendant within that range. So I think that really gets straight to the point. And I think as far as the evidence in this case, I don't think there was any error in this first issue because counsel pointed out that the Court stated the defendant's conduct caused or threatened serious physical harm, which is in the direct recitation of the aggravating factor element of the statute that allows the Court to consider that. But in People v. Ward, the court district said a court's passing acknowledgement that a victim was harmed in a case is not sufficient to indicate that that's what the court based its decision on because it's unrealistic to expect a trial judge to seal their lips, so to speak, and avoid saying that a person was injured during sentencing, with the consequence being an automatic reversal on the other hand. So I think under that context, that statement's not really indicative of the court's actual reasoning. And then we go on to the second statement that the defendant cited in the brief as evidence that the court had improperly considered the harm was the court stating after it agreed with the People that a five-day sentence was appropriate, the court stated, the issue here for me is that there was a victim who was seriously injured and is going to be suffering, suffered already from the point of impact, and changed his life in the course of his life. Clearly, the court is considering the serious degree of the harm that was caused to the victim. And the defendant tries to distinguish the different harms that happened in other cases, but this was the judge's discretion in this case, and she tries to determine, or she tries to point out that certain injuries can be worse than others. But the victim in this case was in a coma for several weeks. He was in the hospital for 10 weeks. He had four or five surgeries, as you pointed out, a lacerated spleen, a ruptured diaphragm, broken bones, acute kidney injury with loss of kidney function, a ruptured bladder. It goes on. I mean, the injuries were horrific in this case, and it derailed this individual's life. As the records show, he and his girlfriend were, it was the first day they moved into their new apartment. He ended up losing that apartment because he was hospitalized. He couldn't drive for a period of time afterward. And as Justice Wright pointed out, there were over a million dollars in medical bills. And while counsel tries to say, well, medicine is expensive, medical care is expensive, this was unnecessary. This never had to happen. And that speaks to the deterrence issue. Counsel makes an interesting argument with regard to deterrence. She relies on the Marvin case as well as the People v. Avery case. But those cases are distinguishable. With Avery, they weren't trying to determine the intent and that being an element of deterrence. They were trying to determine whether or not making DUI an absolute liability violates a defendant's right to be processed. And simply because there's no mens rea in an aggregated DUI does not mean that there's not an intent element to be considered for sentencing purposes. And that position is borne out in the Fourth District case of People v. Willingham, which was a DUI case. And in that case, the court stated, although the legislature has increased DUI penalties, the judiciary must do its part by recognizing the terrible consequences of this preventable crime and impose sentences addressing the need to punish and deter those who make the conscious and intentional choice to drive drunk. And so this isn't trying to prove an element of a conviction. This is the court's discretion in sentencing to consider that this individual, this defendant, drank. He went to a bar, he consumed enough alcohol to become intoxicated, brought five or six beers with him, as the record showed they shattered on him in the vehicle during the accident, and drove drunk and caused a serious injury to the victim in this case. And that was an intentional choice. DUI is the most preventable crime because no one has to drive drunk. It's a perfect choice by that individual. And so I think that's why deterrence is an essential element in a DUI sentencing. And as the court stated numerous times, this is sending a message to the public that we need to deter this type of behavior. And so she sentenced him to five years, which I think is an appropriate sentence in this case. As the justices have noted, and this gets into the second issue, the sentencing range was one to 12 years. He received a sentence of less than half the maximum range. That is presumed to be a proper sentence with that in regard. The court also made mention of the fact that it was a shout-out to the community, and it also was relevant that this defendant had also had a prior DUI conviction. And so while he did complete supervision and that conviction was 20 years earlier, it's clear that it didn't have the effect of deterring him from committing that same behavior. And this time when he did it, he caused a serious injury to another person. It wasn't simply a misdemeanor DUI. And so I think that underscores the importance of deterrence in this case. With regard to the sentencing issue, counsel pointed out as far as the probation, that there was no evidence that the court considered probation in this case. And on that point, on page 23 of my brief is where she refers to the reliance that probation was not available. On further reading of this court's decision in Rennie, I do agree that the probation was available. So that argument we are going to withdraw. But the fact is the court did consider probation. As the record shows, the court ordered that the defendant be evaluated for task probation, which is a substance abuse probation. But he was ineligible. Correct. He ended up not being eligible due to the nature of this crime. Second, the record shows that the court did inform the defendant that he was eligible for probation. This occurred prior to the sentencing hearing when the defendant was, I don't know if this behavior was erratic, but the court seemed to think that the defendant was just constantly obsessed with the fact that this was a traffic violation in his mind. And she wasn't sure if he was necessarily fit for sentencing. And she told him, you are eligible for probation as well as conditional discharge and another element. But I think most importantly with regard to probation, and this will also speak to the argument regarding deprecating the seriousness of the offense, the defense counsel argued for probation at sentencing, page 565 to 567. They talked about the defendant's health issues and those things and argued it was more appropriate for probation plus jail time. The trial court addressed that statement on page 569. The court said, would it, probation, do anything for Mr. Jones and would it do anything to deter others? I think the questioning that the court is doing here is indicating that probation would deprecate the seriousness of the offense here. And I think that's a logical inference to be made from that statement. Well, the defendant's PSI, it reports that when asked about the current state of his health, the defendant stated, I'm fine, I usually don't get in trouble. This is an uncompromising position that no one wants to be in. I'm hurt and I'm angry. I'm offended. He expressed a great deal of frustration through the PSI interview and the way the case played out and was handled by the parties. I was disrespected in the crash that I was injured. I think that speaks to his lack of remorse. And I think that makes the five-year sentence even more appropriate because in the trial court referred to the PSI and referred to the statements that you just quoted on page 568, the court stated that the defendant's attitude throughout these proceedings is that he was wrong. And that's sort of evinced by his complaining that this was a traffic issue. He couldn't seem to comprehend how gravely he injured this other individual. The record also shows the court stated that he didn't want to be here with him. So his mother came in his place and stated that he was doing better at this time, a year and a half later, however long it had been since the injury, and that he had started working again. But that doesn't take away from the fact that his life was completely derailed for no fault of his own. He was returning from a dinner with his girlfriend's parents, and the defendant plowed into them, running a red light, intoxicated. And I think that with these factors, the young age of the victim, how it had such a terrible impact on the life, it clearly had a resonance with the victim in the fact that he still, this much time later, didn't want to be present. It clearly had that effect. Plus, he's got permanent scars, which counsel, in a reply brief, kind of dismisses the fact that he is scarred from this, and that he'll have a constant reminder of this incident because he wasn't charged under a disfigured statute with the defendant. I don't think that's really a relevant consideration when it comes to sentencing. I think it's a relevant consideration for the court as far as the fact that he'll be reminded of it.  So perhaps it can be inferred that it was something that caused him issues. And the last thing I want to discuss as far as the sentence, counsel argued that the trial court gave insufficient weight to the mitigating evidence, and I don't think that's the case. I think we talked about how serious the offense was and the harm, the degree of harm that was caused to the victim and the need to deter. The defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. And this is a defendant who I believe is approaching 60 years old. He's committed the same crime he's already committed 20 years ago. Because of his disability, he's unable to work, but yet he has no dependents that would require him not to be in prison to support them. He does do some work mowing grass for a soccer club and some other things, but I think given what the victim went through in this case, I just can't see that those factors should somehow outweigh the seriousness of the offense. That was the last two minutes. Thank you. And in addition, the trial court stated it had considered all the factors and aggravated the mitigation. It specifically considered the defendant's statement in elocution, the defendant's letters of support from his friends and family. All of those things were specifically considered, and yet the court still fashioned this reasonable sentence, which was less than half of the available maximum that he could face. And so I think given the seriousness, the harm caused, the need to deter, and the lack of remorse, I think that the five-year sentence was appropriate, and the people would ask this court to affirm the defendant's sentence. Are there any other questions? Thank you. Thank you, Mr. Atwood. Ms. Ahrenheim? I have a couple of things I'd like to respond to. First, quickly about the Mitoc case,  because it does favor our position. But I do want to point out that the court made it clear that the fact that that was what I think you described as a class of trouble enhancer, which it was, I believe, that put him into a different range of sentencing. The court said that's the case without a difference, and the speakers that rely on the case here have been involved in that comparison. So I do think it applies to our position, which obviously is contrary to theirs, is that the evidence was closely balanced in sentencing. I just have a couple of points to make about that. I'm surprised that the state now argues the prior conviction from 20 years ago, because the trial judge explicitly said that he does not have an aggravating criminal background, that that was remote in time, it was a misdemeanor DUI, and to suggest 20 years go by that he needs further deterrence I think is contrary really to the court's finding, that this was not to be considered an aggravation. Also, with regard to the deterrence issue, whether that can be properly considered, I would like to challenge this argument that it was his choice to drive and that that is somehow something that needs to be deterred. When we're talking about deterrence, we're talking about the elements of defense, the choice to drive is not an element of defense. And you can say that in any case, including Martin, which was a reckless homicide case. I have to back you up. The choice to drive is not an element of the offense. The state has to prove that he was operating a motor vehicle upon a highway of the state. That's correct. But the choice to drive, he's talking about, in a sense, has a de facto mens rea by choosing to drive is his argument. No, there's no question that the deterrence that is embedded in the statute is of the conduct and does not require proof of any kind of mental state. That's my point. And the state's argument, I believe, is that in essence it does because you make a choice to drive. So it's sort of a de facto mens rea is the way I read their argument. And I think you can make that argument in any case, including Martin, which was a reckless homicide and the court said that recklessness cannot be deterred. They didn't say, well, this was actually a gun that went off and killed someone. They didn't say, well, we need to deter someone from picking up a gun. I mean, that would be the same argument. They focused on the mens rea component of the offense in determining whether deterrence is a proper aggravating factor. So that's the challenge that I would make to that. It's an argument you can make in any case and it would really undo what the court said in Martin. Finally, I just want to mention, my opponent says my client has no dependency. He does have a love of family business and his mother has a very close relationship with her two-thirds of the day and they take care of each other and he would do so if he were not here. And even despite not having any descendants, which I think the court can see from the record, was also his choice because of his congenital heart condition. He felt that he did not want to carry this down to the next generation. His father died at a very young age. So he is somewhat disabled and he can do some functioning and volunteer work, but when he's been home, which hopefully he will be for too long, whether or not we prevail on appeal, he and his mother will be taking care of each other and I consider that litigation as well. If there are no further questions, then thank you so much. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.